**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001151
29-JAN-2016
09:09 AM**

NO. CAAP-14-0001151


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
RYAN NAKAMITSU, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(1DTA-14-02783)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Defendant-Appellant Ryan Nakamitsu (Nakamitsu) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment (Judgment), entered on September 12, 2014, in the District Court of the First Circuit, Honolulu Division (District Court).[1] The District Court convicted Nakamitsu of one count of Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and (3) (Supp. 2015)[2]

---

[1] The Honorable David W. Lo presided.

[2] HRS § 291E-61 provides in relevant part:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]

. . . .

(3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

On appeal, Nakamitsu argues that the District Court wrongly convicted him (1) after failing to ensure that he waived his constitutional right to testify knowingly, intelligently, and voluntarily; (2) where the OVUII charge was fatally defective for failing to define the term "alcohol"; (3) after erroneously denying Nakamitsu's "Motion in Limine to Preclude Evidence of Any Measurement Purporting to Measure [Nakamitsu's] Alcohol Content and Any Statements Made by [Nakamitsu]" (Motion to Suppress BAC) where his decision to submit to the test was not voluntary, knowing, or intelligent; (4) after wrongly denying Nakamitsu's motion to strike the testimony of Officer Chester Desiderio (Officer Desiderio) regarding Nakamitsu's performance on the standardized field sobriety test (SFST), which was not based on the officer's present recollection; (5) after wrongly denying Nakamitsu's motion to re-call Officer Edward Tabanera (Officer Tabanera) to rebut Officer Desiderio's testimony regarding the administration and grading of the SFST; and (6) after erroneously denying Nakamitsu's motions for judgment of acquittal where the evidence was insufficient to support a conviction under HRS § 291E-61(a)(1) or (3).

For the reasons set forth below, we vacate the conviction for OVUII in violation of HRS § 291E-61(a)(1) and remand for proceedings on that count consistent with this opinion, and we reverse the conviction for OVUII in violation of § 291E-61(a)(3).

I.

On June 20, 2014, the State charged Nakamitsu by Complaint, in relevant part, as follows:

> COUNT 1: On or about June 1, 2014, in the City and County of Honolulu, State of Hawai'i, [Nakamitsu] did intentionally, knowingly or recklessly operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of [OVUII], in violation of Section 291E-61(a)(1) and/or (a)(3) of the [HRS].

2

On September 5, 2014, Nakamitsu filed "[Nakamitsu's] Motion to Dismiss Count 1 for Failure to State an Offense" (Motion to Dismiss). He argued that the OVUII charge in Count 1 was insufficient for failing to include the definition of "alcohol" set forth in HRS § 291E-1. Plaintiff-Appellee State of Hawai'i (State) opposed the motion, arguing that the reference to "alcohol" was consistent with its commonly-understood meaning. At a September 10, 2014 hearing, the court summarily denied the Motion to Dismiss.

On September 5, 2014, Nakamitsu filed his Motion to Suppress BAC. He moved the District Court to suppress his BAC result on the ground that Hawai'i's implied consent law and the related provisions of HRS Chapter 291E criminalizing the refusal to submit to BAC testing were unconstitutional. The State opposed the motion, and at trial, the court summarily denied it.

On the first day of trial, on September 10, 2014, the District Court gave Nakamitsu the following advisement:

> THE COURT: All right. Mr. Nakamitsu, first of all, you have the right to remain silent, and if you remain silent I will not hold that against you, and that if you testify, the prosecutor has the opportunity to cross-examine you.
>
> You understand?
>
> [Nakamitsu]: Yes, Your Honor.

Officer Desiderio testified that he responded to a vehicular accident on June 1, 2014, at around 4:50 a.m. When he arrived, he saw a vehicle on the side of the road, in front of a light post that had fallen down. A man (later identified as Nakamitsu) walked from the vehicle and knelt down.

Nakamitsu told Officer Desiderio that he had been driving the vehicle, and began crying. The officer detected the smell of alcohol coming from Nakamitsu's body and breath. Nakamitsu was trying to balance himself and uttered something along the lines of "I'm fucked, I'm fucked."

Officer Desiderio conducted the SFST. Nakamitsu exhibited six clues on and failed the Horizontal Gaze Nystagmus (HGN) test. During the instructional phase of the Walk-and-Turn test, Nakamitsu kept trying to keep his balance.

3

On direct-examination of Officer Desiderio regarding the Walk-and-Turn and One-Leg Stand tests, the State refreshed the officer's recollection with a copy of his SFST report:

[State]. Do you remember what -- any clues exhibited during the instructional portion of the . . . [Walk-and-Turn] test?

[Officer Desiderio]. Can't recall it. I have it in my report that I submitted.

Q. Would anything refresh your recollection?

A. Yes, my report that I submitted.

[State's counsel]. May I approach, Your Honor?

. . . .

[State]. Officer, is -- you recognize this document?

[Officer Desiderio]. Yes, ma'am.

Q. What is this?

A. This is . . . what we use for [sic] SFST sheet, the standard --

Q. Is this the --

A. -- [SFST]

Q. -- FST sheet that you used that night?

A. Yes, ma'am.

Q. Can you refresh your recollection.

A. Okay.

. . . .

[State]. May the record reflect I'm taking back the [SFST] [form].

Q. Officer, so can you tell us about the instructional portion of the walk-and-turn.

[Officer Desiderio]. Okay.

Q. Now, were the -- any clues exhibited?

A. Yes, his balance.

Q. So he couldn't keep his balance[.]

A. Yes, couldn't keep --

Q. -- what you're telling us?

A. -- balance.

Q. Was there anything else?

A. Starts early.

Q. Okay. Are those both clues, Officer?

A. Yes.

. . . .

[State]. Okay. . . . [G]oing on to the walking portion of the test, did you observe any clues?

[Officer Desiderio]. Yes. Misses heel and toe. He . . . basically walk [sic] off the line. Tried to -- I guess, the turn.

Q. Uh-huh.

A. Okay. The turn is not exactly as instructed. And also the number of steps that was taken.

Q. Okay. Basically -- so you're saying the turn wasn't as instructed?

A. Wasn't as instructed. The pivot -- I believe the pivot was too fast. And if I can recall, it would be, like, the other way, like on a . . . different step, just because that he made several more steps than the nine that . . . was [sic] instructed.

. . . .

[State]. So how many clues did you observe in this walk-and-turn?

[Officer Desiderio]: I believe around eight.

Q. And how many clues does it take to fail this test?

A. Four.

The State asked Officer Desiderio about Nakamitsu's performance on the One-Leg Stand test:

[State]. And do you recall what you observed?

[Officer Desiderio]. Yes. Everything is recorded in the report I submitted.

Q. All right. . . . [H]ow many clues can be exhibited? Do you remember?

A. No, I don't. I --

Q. Would you like to --

. . . .

[State]. -- refresh your memory --

. . . .

[State]. -- with your report?

[Officer Desiderio]. -- yes.

. . . .

[State]. May I approach, Your Honor?

THE COURT: You may.

. . . .

[State]. May the record reflect I'm taking the report away.

. . . .

[State]. . . .

Do you independently remember this, once you looked at your report? Do you remember how [Nakamitsu] did on the test?

[Officer Desiderio]. Yeah, somewhat remember.

Q. Okay. And do you remember what you observed about how he did the test?

A. Basically, he hops. I . . . do remember [sic] putting his foot down at 19 seconds and [sic] kind of swayed sideways. And then -- yeah, he wasn't able to keep his balance during that time.

. . . .

[State]. Officer, how many clues did he exhibit on the one-leg stand, do you remember?

[Officer Desiderio]. At least -- I would say four or more.

On cross-examination, Officer Desiderio testified about the National Highway Traffic Safety Administration's (NHTSA's) standards for administering and grading various aspects of the SFST. He testified that the SFST had to be administered and graded in accordance with the NHTSA to be valid.

On the second day of trial, on September 12, 2014, Nakamitsu's counsel continued to ask Officer Desiderio about Nakamitsu's performance on the SFST:

[Nakamitsu's counsel]. Now, on Wednesday you testified that [Nakamitsu] took several more steps than instructed on the walk-and-turn.

But isn't it true that he only took one extra step?

[Officer Desiderio]. Whatever is in my report, that I wrote in there, that's basically what it --

Q. If I showed you a copy of your report would . . . it refresh your recollection.

A. Yes.

Yes. So on the first nine step, took an additional one. And I believe that's the reason why I -- I did put that made the turn, not as instructed.

6

Q. Okay. But not several extra steps, just one; correct?

A. I believe so.

Q. I'm sorry.

A. Oh, whatever I wrote in there.

Q. Okay.

A. Yeah.

Q. And do you remember, Officer Desiderio, that actually when he took that one extra step he said, Oops, I'm sorry, and, I took an extra step, and then he turned?

A. I could not recall if --

Q. You cannot recall that?

A. -- he did or not.

No.

Q. Okay. And that's not in your report?

A. No.

Q. Where were you standing when the walk-and-turn was conducted? Where were you standing in relation to . . . [Nakamitsu]?

Officer Desiderio went on to testify without the aid of his SFST report that while Nakamitsu performed the Walk-and Turn test, the officer was facing the sidewalk, standing mid-way between the starting and turn points of the imaginary line used for the test. When asked if Nakamitsu walked off the line during the first set of steps, the officer stated he would need his report to refresh his memory.

Nakamitsu's counsel asked Officer Desiderio if he had any independent recollection of the SFST or was his testimony solely based on his reading of the SFST report:

[Nakamitsu's counsel]. Okay. Now, when the prosecutor was asking you questions and when I'm asking you questions . . . you need to refer to your report to testify about what your recollection is of . . . this particular [SFST]; correct?

[Officer Desiderio]. Yes.

Q. Do you have any independent recollection of . . . [Nakamitsu's] performance on the test? Or is it, basically, just reading from your report?

A. I do have [sic] independent recollection, not necessarily of the -- when he was taking the test.

7

Q. Okay. So you remember the incident?

A. Yes.

Q. You remember [Nakamitsu]?

A. Yes.

Q. You remember administering the test to him?

A. Yes.

Q. But the details of the results you don't remember?

A. Whatever I wrote in there -- because while I was testing, okay, I'll be, like, making tick marks, either when I was (indiscernible) if I have a glove or right on my hand.

. . . .

[Nakamitsu's counsel]. Without looking at your writing or your notes or the -- your report, you're not able to testify about his performance on the [SFST]?

[Officer Desiderio]. Well, I would need my report.

Nakamitsu's counsel moved to strike Officer Desiderio's testimony regarding Nakamitsu's performance on the SFST on the basis that the officer could not testify without his report, which was impermissible. The State disagreed, arguing that the officer could recall aspects of the SFST and was not expected to have absolute, total recall as to every single clue. The District Court summarily denied the motion.

Officer Desiderio testified that based on the overall circumstances, including the accident and Nakamitsu's performance on the SFST, he arrested Nakamitsu for OVUII.

At the police station, Officer Desiderio read to Nakamitsu, verbatim, an implied consent form admitted into evidence at State's Exhibit 1. The form stated, among other things, that if the defendant refused to take a BAC test, he or she would be charged with refusal to submit to testing, a petty misdemeanor, and subject to up to thirty days in prison and/or a fine of up to $1,000, or the sanctions in HRS § 291E-65 if applicable.

Nakamitsu agreed to take a breath test. The officer indicated in a sworn statement, admitted into evidence as State's Exhibit 2, that Nakamitsu's BAC was 0.145 grams of alcohol per two hundred ten liters of breath.

Officer Tabanera testified that on June 1, 2014, at approximately 4:15 a.m., he arrived at the scene and observed Nakamitsu's eyes were kind of red and glassy and he emitted the odor of an intoxicant.

Officer Tabanera investigated the accident and saw that Nakamitsu's vehicle had come to a rest at the base of a street-light pole, which was dislodged and lying on the ground. The vehicle's front bumper and engine area were severely damaged. The officer did not see any marks that would have resulted from the application of a vehicle's brakes, and he did not see any other vehicles or obstructions in the roadway.

On cross-examination, Nakamitsu's counsel asked Officer Tabanera if he had been in the Traffic Division and trained to investigate DUIs in accordance with the NHTSA, and the officer responded that he had been. The State objected on the ground that the questions went beyond the scope of direct examination, which concerned Officer Tabanera's investigation into the vehicular accident and not the OVUII. The District Court overruled the objection, stating that sustaining it would "not really matter" because Nakamitsu could call Officer Tabanera as his witness in Nakamitsu's case-in-chief.

Nakamitsu's counsel continued to cross-examine Officer Tabanera regarding his qualifications to conduct OVUII investigations. The officer testified that he was qualified to administer an SFST. When counsel asked the officer if he was familiar with the HGN test, the State objected on relevancy grounds because the officer had not conducted the HGN test in this case. Without explanation, the District Court sustained the objection. Nakamitsu's counsel moved to make an offer of proof, and the court denied the motion. The State rested its case.

After the State rested its case, the District Court engaged Nakamitsu in the following colloquy:

THE COURT: All right. Mr. Nakamitsu, as I said at the outset, you have the right to remain silent. If you remain silent I will not hold that against you. If you testify, the prosecutor has the opportunity to cross-examine you.

You understand that?

[Nakamitsu]: Yes, Your Honor.

THE COURT: Have you, yourself, made a decision to remain silent or take the stand?

[Nakamitsu]: Silent.

THE COURT: And that is your decision?

[Nakamitsu]: Yes, Your Honor.

Nakamitsu's counsel moved for judgment of acquittal on the basis that the SFST evidence should be stricken because Officer Desiderio could not testify about the particulars without reading his report, and without that evidence there was insufficient evidence to support the charge of OVUII in violation of HRS § 291E-61(a)(1). Counsel also moved for judgment of acquittal on the ground that the State failed to elicit testimony as to an essential element of OVUII, i.e., whether the alcohol Nakamitsu allegedly consumed was distilled or denatured. The District Court summarily denied the motions.

After Nakamitsu rested his case, he renewed the motion for judgment of acquittal. The District Court denied the renewed motion.

Nakamitsu's counsel moved to re-call Officer Tabanera to the stand, and the District Court denied the motion. The court permitted counsel to make an offer of proof that Officer Tabanera's testimony regarding the NHTSA's standards for grading the SFST would rebut Officer Desiderio's testimony that a defendant must show four clues of impairment to fail the Walk-and-Turn test; every step of the Walk-and-Turn required a heel-to-toe connection; any nystagmus, not just a sustained nystagmus, constituted a "clue" on the HGN test; a sway of any width constituted a clue of impairment on the One-Leg Stand test; and raising the arms any distance away from the body constituted "raising arms" on the One-Leg Stand. Nakamitsu's counsel asserted that Officer Tabanera's testimony would be relevant

because he graduated from the Police Academy and was NHTSA-qualified.

The District Court orally ruled as follows:

> THE COURT: Court finds the evidence beyond a reasonable doubt to find [Nakamitsu] guilty on both the 291E-61(a)(1) as well as the [291E]-61(a)(3) charge. And the court finds [Nakamitsu] guilty based on what happened.
>
> And Court also finds that the evidence concerning the [SFST], while there is some questions as to the weight or . . . the manner in which Officer Desiderio gave his testimony that it was not even necessary to convict the defendant, find the defendant guilty on the (a)(1) charge.

## II.

### A.    Constitutional Questions

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." State v. Gomez-Lobato, 130 Hawaiʻi 465, 469, 312 P.3d 897, 901 (2013) (citation omitted).

### B.    Plain Error

> "We may recognize plain error when the error committed affects substantial rights of the defendant." State v. Cullen, 86 Hawaiʻi 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). See also Hawaiʻi Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").
>
> State v. Maumalanga, 90 Hawaiʻi 58, 63, 976 P.2d 372, 377, reconsideration denied (1999) (quoting [State v. Davia, 87 Hawaiʻi 249, 253, 953 P.2d 1347, 1351 (1998)]).

State v. Staley, 91 Hawaiʻi 275, 282, 982 P.2d 904, 911 (1999).

### C.    Statutory Interpretation

> When construing a statute, this court's foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. In addition, we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

State v. McKnight, 131 Hawaiʻi 379, 388, 319 P.3d 298, 307 (2013) (citations, internal quotation marks, and brackets omitted).

### D.    Evidentiary Rulings

> The standard of review on appeals from evidentiary rulings depends on the particular rule of evidence at issue. Errors on evidentiary rulings are subject to the abuse of discretion standard unless the application of the rule can produce only one correct answer, in which case, then, the review falls under a right/wrong standard.

State v. Dibenedetto, 80 Hawai'i 138, 145, 906 P.2d 624, 631 (App. 1995) (citations and quotation marks omitted).

### E.    Grant/Denial of Motion to Re-Call Witness

> The latitude permitted counsel in offering testimony and the order of that testimony rests completely within the discretion of the trial court, and an abuse of that discretion must be established before reversal of a conviction based on the testimony or a new trial may be warranted.

State v. Alfonso, 65 Haw. 95, 99, 648 P.2d 696, 700 (1982).

### F.    Sufficiency of the Evidence

> The courts have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. Substantial evidence is evidence which a reasonable mind might accept as adequate to support the conclusion of the fact finder. Matters related to the credibility of witnesses and the weight to be given to the evidence are generally left to the factfinder. The appellate court will neither reconcile conflicting evidence nor interfere with the decision of the trier of fact based on the witnesses' credibility or the weight of the evidence. Thus, we need not necessarily concur with a trial court's particular finding in order to sustain a conviction.

State v. Mitchell, 94 Hawai'i 388, 393, 15 P.3d 314, 319 (App. 2000) (citations, internal block quotation format, internal quotation marks omitted).

### III.

#### A.    Right-to-Testify Colloquy

Nakamitsu argues that the District Court wrongly convicted him (1) after failing to ensure that he waived his constitutional right to testify knowingly, intelligently, and voluntarily. Because Nakamitsu did not raise this argument below, we review it for plain error. See Staley, 91 Hawai'i at 282, 982 P.2d at 911.

The State concedes that the District Court's Tachibana colloquy was insufficient and argues that the Judgment should be vacated and the case remanded for a new trial. Notwithstanding

12

the State's concession that the District Court's colloquy regarding Nakamitsu's right to testify was deficient and the Judgment should be vacated, "appellate courts have an independent duty 'first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'" State v. Veikoso, 102 Hawai'i 219, 221-22, 74 P.3d 575, 577-78 (2003) (quoting State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000). In other words, the State's concession of error "is not binding upon an appellate court[.]" Hoang, 93 Hawai'i at 336, 3 P.3d at 502 (quoting Territory v. Kogami, 37 Haw. 174, 175 (Haw. Terr. 1945)) (internal quotation marks omitted).

### 1. Pre-Trial Colloquy

In State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000) (quoting Tachibana v. State, 79 Hawai'i 226, 237 n.9, 900 P.2d 1293, 1304 n.9 (1995)), the Hawai'i Supreme Court held that prior to trial, trial courts must "(1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of trial, the court will briefly question the defendant to ensure that the decision not to testify is the defendant's own decision." In addition, "the trial courts when informing the defendant of the right not to testify during the pretrial advisement must also advise the defendant that the exercise of this right may not be used by the fact finder to decide the case." State v. Monteil, 134 Hawai'i 361, 373, 341 P.3d 567, 579 (2014).

Prior to trial, the District Court engaged Nakamitsu in the following colloquy:

> THE COURT: All right. Mr. Nakamitsu, first of all, you have the right to remain silent, and if you remain silent I will not hold that against you, and that if you testify, the prosecutor has the opportunity to cross-examine you.
>
> You understand?
>
> [Nakamitsu]: Yes, Your Honor.

The District Court's pre-trial colloquy was deficient because it failed to advise Nakamitsu that if he did not testify by the end of trial, the court would briefly question him to ensure that his decision not to testify was his own. See Lewis, 94 Hawai'i at 297, 12 P.3d at 1238.

On appeal, the pre-trial advisement is reviewed for "actual prejudice." Id. ("Because we view this prior-to-trial advisement as incidental to the ultimate colloquy, any claim of prejudice resulting from the failure of the trial court to give it must meet the same actual prejudice standard applied to violations of the colloquy requirement.") (citations, internal quotation marks, and brackets omitted). Because we hold that the failure to properly conduct the "ultimate colloquy" was harmful error, infra, we need not address the issue of whether Nakamitsu could demonstrate "actual prejudice" with respect to the pre-trial colloquy.

2. "Ultimate" Colloquy

In Tachibana, 79 Hawai'i at 236, 900 P.2d at 1303, the Hawai'i Supreme Court held that "in order to protect the right to testify under the Hawai'i Constitution, [] trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." Further, a trial court should limit the colloquy to advising the defendant that "he or she has a right to testify, that if he or she wants to testify that no one can prevent him or her from doing so, and that if he or she testifies the prosecution will be allowed to cross-examine him or her." 79 Hawai'i at 236 n.7, 900 P.2d at 1303 n.7 (citation, internal block quotation format, and brackets omitted). Last, "[i]n connection with the privilege against self-incrimination, the defendant should also be advised that he or she has a right not to testify and that if he or she does not testify then the jury can be instructed about that right." Id. (citation, block quotation format, and brackets omitted).

14

The District Court gave Nakamitsu the following "ultimate" colloquy:

> THE COURT: All right. Mr. Nakamitsu, as I said at the outset, you have the right to remain silent. If you remain silent I will not hold that against you. If you testify, the prosecutor has the opportunity to cross-examine you.
>
> You understand that?
>
> [Nakamitsu]: Yes, Your Honor.
>
> THE COURT: Have you, yourself, made a decision to remain silent or take the stand?
>
> [Nakamitsu]: Silent.
>
> THE COURT: And that is your decision?
>
> [Nakamitsu]: Yes, Your Honor.

The "ultimate colloquy" was deficient for failing to advise Nakamitsu that he had the right to testify and that no one could prevent him from testifying.

In Tachibana, the Hawaiʻi Supreme Court held that "[o]nce a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Id. at 240, 900 P.2d at 1307. It cannot be said that the District Court's violation was "harmless beyond a reasonable doubt," because it is unknowable from the record whether any testimony by Nakamitsu would have established reasonable doubt that he committed OVUII. State v. Hoang, 94 Hawaiʻi 271, 279, 12 P.3d 371, 379 (App. 2000). See State v. Pomroy, 132 Hawaiʻi 85, 94, 319 P.3d 1093, 1102 (2014) as corrected (Jan. 29, 2015) (district court's Tachibana violation was not harmless where the court could not know "from [the] record whether Pomroy's testimony, had he given it, could have established reasonable doubt that he committed [the offense]").

With regard to the "ultimate colloquy," the District Court plainly erred by failing to obtain a valid on-the-record waiver from Nakamitsu of his right to testify.

B.    Motion to Dismiss

Nakamitsu argues that the District Court erred and deprived him of his right to due process in denying the Motion to Dismiss, where the OVUII charge was fatally defective for failing

15

to define the term "alcohol" and, thus, did not inform him of the nature of the charges against him.

In State v. Turping, 136 Hawai'i 333, 361 P.3d 1236 (2015), as corrected (Mar. 19, 2015) cert. rejected (May 20, 2015), this court rejected the argument that a charge was deficient for failing to include the definition of alcohol. Moreover, we have rejected the argument that alcohol, as defined by HRS § 291E-1, is limited to distilled forms. State v. Tsujimura, CAAP-14-0001302, slip. op. at 4 (App. Jan. 27, 2016).

The District Court did not err by denying the Motion to Dismiss.

C.    Motion to Suppress BAC

Nakamitsu argues that the District Court erred in denying his Motion to Suppress BAC because, among other things, Hawai'i's implied consent law and the related provisions of HRS Chapter 291E criminalizing the refusal to submit to BAC testing are unconstitutional.

At trial, Officer Desiderio testified that he read the implied consent form verbatim to Nakamitsu. The form stated that if a defendant refused to take a test, he would be charged with refusal to submit to testing, a petty misdemeanor, and subject to up to thirty days in prison and/or a fine of up to $1,000, or the sanctions in HRS § 291E-65 if applicable. After the officer read the form, Nakamitsu opted to take the breath test.

In State v. Won, 136 Hawai'i 292, 361 P.3d 1195 (2015), a police officer stopped Won for speeding, and noticed that Won's breath had an odor of alcohol and his eyes were red and watery. Id. at 297, 361 P.3d at 1200. The officer concluded that Won was likely intoxicated and administered to him an SFST and Preliminary Alcohol Screening, both of which Won failed. Id. at 297-98, 361 P.3d at 1200-01. The officer arrested Won for OVUII in violation of HRS § 291E-61(a)(3).

At the police station, a police officer read Won an implied consent form, which informed Won, among other things, that if he refused to submit to a breath, blood, or urine test, he would be subject to up to thirty days in prison and/or a fine of up to $1,000 or the sanctions of 291E-65, if applicable. Id.

at 297-98, 361 P.3d at 1200-01. Won assented to a breath test. Id. at 298, 361 P.3d at 1201.

The breath test measured Won's BAC at 0.17 grams of alcohol per two hundred ten liters of breath. Id. The State charged Won in an amended complaint with OVUII, in violation of HRS § 291E-61(a)(3). Id.

At trial, Won filed a motion to suppress statements and evidence of his breath test. Id. The State opposed the motion, and the district court denied it. Id. at 298-99, 361 P.3d at 1201-02. The court convicted Won as charged. Id. at 299, 361 P.3d at 1202.

Won appealed to this court, arguing that the State obtained his BAC in violation of his constitutional right to refuse to consent to the breath test because the State coerced his consent by the threat of criminal prosecution and penalties. Id. This court affirmed Won's conviction and sentence. Id. Won applied for a writ of certiorari, which the Hawai'i Supreme Court granted. Id.

The Hawai'i Supreme Court held that under the totality of the circumstances, Won's election to submit to the BAC test was not voluntary. The Hawai'i Supreme Court held that the district court erred in not suppressing the result of Won's breath test. Id. at 318, 361 P.3d at 1221. Accordingly, the supreme court vacated the judgment on appeal and amended judgment of conviction and remanded the case to the district court for further proceedings consistent with the opinion. Id. In a footnote, the supreme court indicated that its holding would apply to Won and cases pending on direct appeal or not yet final at the time Won was rendered. Id. at 318 n.49, 361 P.3d at 1221 n.49.

Here, as in Won, Nakamitsu assented to a breath test after being informed that if he exercised his right to refuse to submit to a BAC test, his refusal would constitute the commission of a crime. Pursuant to Won, Nakamitsu's election to submit to the BAC test was not voluntary.

D.    Motion to Strike Officer Desiderio's SFST
       Testimony

Nakamitsu argues that the District Court wrongly denied his motion to strike the testimony of Officer Desiderio, where the officer had no present recollection of Nakamitsu's performance on the SFST and his testimony on that point was based only on what he read in his report. Nakamitsu cites to <u>State v. Dibenedetto</u>, 80 Hawai'i 138, 906 P.2d 624 (App. 1995), to support this argument.

Hawaii Rules of Evidence (HRE) Rule 602 generally requires that a witness have personal knowledge of matters to which he or she testifies. Rule 612 allows for the use of writings to refresh the memory of a witness, thus bringing the matters within the realm of the witness's personal knowledge. In <u>State v. Ferrer</u>, 95 Hawai'i 409, 432, 23 P.3d 744, 767 (App. 2001), this court explained:

> The purpose of [Federal Rules of Evidence] Rule 612, upon which HRE Rule 612 is based, is
>
> to "refresh memory" when it enables a witness who suffers from loss of memory to recall at the time of his [or her] testimony matters he [or she] perceived in the past. In other words, when a writing is used for these purposes, it simply facilitates the witness' [sic] testimony and is not itself offered into evidence. Thus, where a witness never perceived the matters described or where the writing does not reawaken recollection of past perception, Rule 612 does not permit a witness to simply read into evidence the contents of the writing.
>
> 28 C. Wright & V. Gold, <u>Federal Practice and Procedure: Evidence</u> § 6183, at 446 (1993) (footnotes omitted).

In <u>Dibenedetto</u>, 80 Hawai'i at 140, 906 P.2d at 626, Dibenedetto was charged with committing OVUII in violation of HRS § 291-4(a)(1) or (2) (Supp. 1992).[3] At trial, the arresting officer testified that Dibenedetto failed the field sobriety tests. <u>Id.</u> at 141, 906 P.2d at 627. On cross-examination, the officer testified that his testimony regarding an aspect of the Walk-and-Turn test was based on his report and not his memory of what actually happened. <u>Id.</u> He testified that his memory of the

---

[3]    HRS § 291-4 was repealed and replaced by HRS § 291E-61 in 2000.

events was pretty cloudy and what he did remember was from his recent review of the report. Id.

Counsel for Dibenedetto moved to strike the officer's testimony on the ground that he was not testifying from his "independent recollection" but based on his report. Id. The Circuit Court of the First Circuit (circuit court) denied the motion. Id. at 142, 906 P.2d at 628. After a trial, the circuit court convicted Dibenedetto as charged. Id. at 140-41, 906 P.2d at 626-27.

Dibenedetto appealed, arguing that the circuit court erred in convicting him of OVUII, where the officer who conducted the field sobriety test lacked a present recollection of it. Id. at 144, 906 P.2d at 630. This court agreed, holding that the circuit court wrongly admitted the officer's testimony:

> [T]he officer's candid testimony leads us to the conclusion that the officer did not have a "present recollection" of the test at the time he testified. . . . [T]he officer indicated that his testimony was based on what he had recently read in his report. . . . .
>
> [HRE] Rule 612 indicates that a witness may use a writing to refresh his memory for the purpose of testifying. A writing, such as a police report, used to refresh a witness's memory is ordinarily not submitted into evidence. When used to refresh the witness's present recollection, a writing is solely employed to jog the memory of the testifying witness. Accordingly, when a writing is used to refresh a witness's recollection, the witness should testify from a memory thus revived, resulting in testimony from present recollection, not a memory of the writing itself. A witness's recollection must be revived after he or she consults the particular writing or object offered as a stimulus so that the resulting testimony relates to a present recollection. If the writing fails to rekindle the witness's memory, the witness cannot be permitted to testify as to the contents of the writing unless the writing is otherwise admitted into evidence.

Dibenedetto, 80 Hawai'i at 144, 906 P.2d at 630 (quotation marks, ellipses, and brackets in original omitted).

Here, although Officer Desiderio's recollection of Nakamitsu's performance on the SFST had to be repeatedly refreshed, his testimony was not based on his memory of the report only. Unlike Dibenedetto, Officer Desiderio did not testify that his testimony was based solely on his report, and it appears that the report stimulated his present memory of numerous details. See State v. Keohokapu, 127 Hawai'i 91, 105, 276 P.3d 660, 674 (2012).

Further, as the State argues in its Answering Brief, given that prior to having his recollection refreshed, Officer Desiderio remembered significant details about the incident, such as what he observed when he arrived on the scene and talked to Nakamitsu, it is reasonable to infer that the SFST report merely jogged his memory. See State v. Espiritu, 117 Hawai'i 127, 137-38, 176 P.3d 885, 895-96 (2008) ("[T]hat the Complainant could recall substantial details about the messages prior to reading the report suggests that the Complainant in fact possessed a memory of the messages that only need refreshment via the report.").

The District Court did not err in denying Nakamitsu's motion to strike Officer Desiderio's testimony.

**E.    Motion to Re-Call Officer Tabanera**

Nakamtisu argues that the District Court wrongly denied his motion to re-call Officer Tabanera as a witness to rebut Officer Desiderio's testimony regarding the NHTSA's standards for administration and grading of the SFST.

HRE Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible unless a rule compels its exclusion. See HRE Rule 402.

The court abused its discretion, see HRE Rule 611 (trial court has discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence") in denying the motion to re-call Officer Tabanera to rebut Officer Desiderio's testimony regarding Nakamitsu's performance on the SFST. Testimony by Officer Tabanera regarding the NHTSA's standards for administering and grading the SFST was relevant to whether Officer Desiderio properly graded Nakamitsu's performance on the SFST, and Nakamitsu's performance on the SFST was a factor in the court's decision to find Nakamitsu guilty of OVUII in violation of HRS § 291E-61(a)(1). No rule compelled exclusion of this relevant evidence.

F.      Motions for Judgment of Acquittal

Nakamitsu argues that the District Court erroneously denied his motions for judgment of acquittal where the evidence was insufficient to support the conviction under HRS § 291E-61(a)(1) or (3).

1.      Substantial Evidence to Support HRS §291-61(a)(1)

Nakamitsu maintains that without Officer Desiderio's testimony regarding Nakamitsu's performance on the SFST, which should have been stricken, and given the absence of any evidence as to how Nakamitsu's vehicular accident occurred, there was insufficient evidence that he committed OVUII in violation of HRS § 291E-61(a)(1).

As discussed, see Part III.D., the District Court did not err by denying Nakamitsu's motion to strike Officer Desiderio's testimony regarding Nakamitsu's performance on the SFST. In addition, the officer testified that Nakamitsu walked away from a vehicle on the side of the road, in front of a light post that had fallen, knelt down, said he had been driving the vehicle, began crying, emitted the smell of alcohol from his body and breath, tried to balance himself, said something like "I'm fucked, I'm fucked," and failed the SFST. Officer Tabanera testified that Nakamitsu had kind of red and glassy eyes and emitted the smell of an intoxicant.

The State adduced substantial evidence regarding how the vehicle accident occurred. Officer Tabanera testified that his investigation showed Nakamitsu's vehicle had come to a rest at the base of a street-light pole, which was dislodged and lying on the ground. The vehicle's front bumper and engine area were severely damaged. There were no marks that would have resulted from the application of a vehicle's brakes, or any other vehicles or obstructions in the roadway.

Given the prerogative of the finder of fact to determine the credibility of the witnesses and the weight of the evidence, Mitchell, 94 Hawai'i at 393, 15 P.3d at 319, and "to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence[,]" see State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (citation

and internal quotation marks omitted), there was substantial evidence that Nakamitsu operated his vehicle under the influence of alcohol in violation of HRS § 291E-61(a)(1).

### 2. Insubstantial Evidence for HRS § 291E-61(a)(3)

As Nakamitsu argues, without the BAC evidence, which was inadmissible because Nakamitsu did not submit to the BAC test voluntarily, there is insufficient evidence to support the conviction for OVUII under HRS § 291E-61(a)(3).

### IV. CONCLUSION

Accordingly, for the reasons set forth in this opinion, Nakamitsu's conviction for OVUII in violation of HRS § 291E-61(a)(1) is vacated and the case is remanded for proceedings on that count consistent with this opinion, and the conviction for OVUII in violation of § 291E-61(a)(3) is reversed.

DATED: Honolulu, Hawai'i, January 29, 2016.

On the briefs:

Alen M. Kaneshiro,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

22